UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

AMERICAN TUGS, INCORPORATED,

      Plaintiff,

  -v-                                      No. 16 CV 3462-LTS

3HD SUPPLY LLC, HUMBERTO DIAZ, and
SORAYA VALERO

      Defendants.

-------------------------------------------------------x

## MEMORANDUM ORDER

American Tugs, Incorporated ("Plaintiff") moves for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and S.D.N.Y. Local Civil Rule 55.2(b), on its claim for breach a maritime contract by defendants 3HD Supply, LLC ("3HD") and its managers and principals, Humberto Diaz and Soraya Valero (collectively "Defendants"). (First Amended Complaint. ("Am. Compl."), Docket Entry No. 19, ¶¶ 3.03-3.04.) Defendants have not appeared or responded to the claims asserted in this action, despite being afforded ample time and opportunity to do so. The Court has jurisdiction over this action pursuant to 28 U.S.C. section 1333(1).

The Court has reviewed Plaintiff's submissions carefully and, for the following reasons, Plaintiff's motion for default judgment is granted.

BACKGROUND[1]

Plaintiff is a Puerto Rico corporation with a principal place of business in San Juan. (Am. Compl. ¶¶ 3.01-3.02.) Plaintiff provides maritime transportation throughout the Caribbean region through a fleet of barges and tugboats. (Id. ¶ 4.01.)

3HD is a Florida limited liability company that "is involved in maritime construction projects in the Caribbean." (Id. ¶ 4.02.)

In April 2014, Pedro Rivera, Plaintiff's president, began negotiating with Diaz and Valero, both individually and on behalf of 3HD, for the charter of a fully-crewed "tugboat and barge[, the M/V El Morro and the M/V Sophia,] to transport construction equipment between Trinidad and Tobago." (Id. ¶¶ 4.03-4.04, 4.08-4.09, 5.02, 6.02, 7.02.) The contract was negotiated "in person, by telephone and by email." (Id. ¶ 4.04.) Although "[t]he terms were memorialized in a series of emails," the parties never reduced the contract to writing. (Id. ¶¶ 4.04-4.05.) The parties agreed that Defendants would pay $6,750 per day to charter the barge and tugboat for 30 months. (Id. ¶ 4.08.) Defendants were required "to make payment by wire transfer one month in advance for each month of the charter period." (Id. ¶ 4.08(d).) The parties allocated responsibility for "all necessary fuel, oil, . . . potable water," and port expenses, "including customs and taxes," to Defendants. (Id. ¶ 4.08.)

The parties also agreed to be bound by the "'BIMCO Supply Time' form contract for the charter of vessels," a completed copy of which is attached to the Amended Complaint

---

[1] The facts recited herein are drawn from Plaintiff's Amended Complaint and submissions in connection with this motion practice. In light of Defendants' failure to respond to the complaint, Plaintiff's well-pleaded factual allegations are deemed admitted. See Fed. R. Civ. P. 8(b)(6); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability.").

("BIMCO Form," Docket Entry No. 19-1). (Am. Compl. ¶ 4.06.) The parties specifically agreed to incorporate the early termination provision contained in the BIMCO Form and an identical provision contained in an otherwise unrelated contact between Defendants and Marine Logistics, a firm not party to this action. (BIMCO Form; Am. Compl. ¶¶ 4.06-4.07.) Under this provision, any party wishing to terminate the contract was required to give 90 days' notice. (Id. ¶ 4.07; BIMCO Form.) The BIMCO Form attached to the complaint also stipulated that any disputes would be resolved in New York, New York. (BIMCO Form.)

In December 2014 the parties agreed to the material terms of the contract and the charter commenced on January 20, 2015. (Decl. of Pedro Rivera ("Rivera Decl."), Docket Entry No. 57-2., ¶ 6; Am. Compl. ¶¶ 4.04, 4.08-4.09.) Defendants made the required payments during the first two months of the charter, but ceased payment in "April 2015 citing temporary cash flow problems." (Am. Compl. ¶ 4.11 (internal quotation marks omitted).) The parties agreed to retroactively reduce the daily charter rate to $6,468.75 and Plaintiff continued performance of the charter in reliance on Diaz's promise to wire payment of $120,000 by July 19, 2015.[2] (Id. ¶¶ 4.11-4.13.) Defendants failed to transmit payment and, instead, on July 20, terminated the charter effective immediately. (Id. ¶ 4.12-4.14; Rivera Decl. ¶ 5.)

The pre-termination net invoice balance owed by Defendants totaled $167,468.49 based on gross invoices of $1,157,696.39 less Defendants' remitted payments in the sum of $877,210 and $113,017.91 in credit for periods in which the vessels were not in service. (Rivera Decl. ¶¶ 9-12; Spreadsheet entitled "All Transactions for 3 HD Supply," Docket Entry No. 57-3.) The daily charter rate for the 90 days following Defendants' termination totaled $582,187.50.

---

[2] Contrary to the Amended Complaint, Rivera places the reduction in charter rate in March rather than April 2015, seemingly before Defendant ceased payment. (See Rivera Decl. ¶ 6; see also Am. Compl. ¶ 4.12.)

(Id. ¶ 13.) Rivera also states that Defendants failed to pay required port expenses of $53,257.02 in Port of Spain, Trinidad. (Id. ¶ 14.)

Plaintiff filed its initial complaint, (Docket Entry No. 1.) on May 10, 2016 and its First Amended Complaint on August 31, 2016. When Defendants failed to file an answer or appear, Plaintiff requested entry of a certificate of default against all defendants, which was entered by the Clerk of Court on June 1, 2017. (Docket Entry No. 50.)

## DISCUSSION

Default Judgment

In determining whether to grant a motion for default judgment, courts within this district first consider three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the nondefaulting party would suffer as a result of the denial of the motion for default judgment." Indymac Bank, F.S.B. v. National Settlement Agency, Inc., No. 07 CV 6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (internal quotation marks and citation omitted); see also Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors in review of lower court grant of a default judgment). The Court finds that all three factors weigh in Plaintiff's favor.

Defendants' failure to respond to either Plaintiff's Complaint or Motion for Default Judgment is indicative of willful conduct. See Indymac Bank, F.S.B., 2007 WL 4468652, at *1 (holding that non-appearance and failure to respond to a compliant or motion for default judgment indicate willful conduct). Moreover, the court is unaware of any meritorious defenses and, because Defendants failed to appear, they cannot present such a defense. Finally, the Court finds that Plaintiff will be prejudiced and left with no alternative recourse if it is denied the ability to seek judgment by default.

Although defendants have not appeared to defend this action and the Clerk of Court has entered a certificate of default, this Court must determine "whether the allegations in Plaintiff's complaint are sufficiently pleaded to establish [the defendants] liability." Lenard v. Design Studio, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012).

Breach of Contract

A maritime contract with the primary objective "to accomplish the transportation of goods by sea" is governed by federal common law under the Court's admiralty jurisdiction. Norfolk Southern Ry. v. James N. Kirby, Pty Ltd., 543 U.S. 14, 23-25 (2004). To establish a breach of contract, a Plaintiff must demonstrate "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004); see Zim Am. Integrated Shipping Servs. Co., LLC v. Aegis Trading & Shipping Co., No. 14-CV-2606 KBF, 2014 WL 5286102, at *1 (S.D.N.Y. July 23, 2014) (applying this analysis to a breach of maritime contract claim). "Under maritime law, a binding oral contract is created when the parties reach agreement on all material terms of a contract and clearly express their intention to be bound by those terms." May Ship Repair Contracting Corp. v. Barge Columbia New York, 160 F. Supp. 2d 594, 597 (S.D.N.Y. 2001). Plaintiff's factual allegations and proffers, including the completed BIMCO Form, establish that, in December 2014, the parties agreed to be bound by the material terms of the contract, including price (consideration), duration, responsibility for certain expenses, Plaintiff's duties, and the area in which Defendants' equipment would be moved. See id.

Plaintiff has also established the other required elements of a contract breach claim. See Eternity Global Master Fund, 375 F.3d at 177. Plaintiff adequately preformed its

duties as evidenced by Plaintiff continuing to transport Defendants' equipment under the contract until it was terminated. Defendants materially breached the contract by failing to remit required payments and by terminating it immediately, notwithstanding the provision requiring at least 90 days' notice. Plaintiff established damages by providing a summary of 3HD's invoices and payments and accounting for port expenses and the daily charter rate during the 90-day notice period.

Because Plaintiff alleges that Diaz and Valero entered into the contract both individually and on behalf of 3HD, all Defendants are liable for the breach. See Restatement (Second) of Contracts, § 288 (1981) ("Unless a contrary intention is manifested, a promise by two or more promisors is a promise that the same performance shall be given."). Accordingly, the Court will enter judgment against them jointly and severally.

Prejudgment Interest

While a Court sitting in admiralty must, save in exceptional circumstances, grant prejudgment interest, the amount set is within the court's broad discretion. Mentor Ins. Co. v. Brannkasse, 996 F.2d 506, 520 (2d Cir. 1993). Plaintiff requests a prejudgment interest rate of 9 percent to reflect the statutory rate applicable to actions brought under New York law. N.Y. C.P.L.R. § 5004. Plaintiff cites several cases in which district courts sitting in New York have used this statutory rate for damages in actions involving the breach of marine insurance contracts. See e.g. Farr Man Coffee Inc. v. Chester, No. 88 CV 1692 (DNE), 1993 WL 248799, at *16 n.33, 44 (S.D.N.Y. June 28, 1993), aff'd, 19 F.3d 9 (2d Cir. 1994). Those cases, however, generally involved courts exercising their diversity jurisdiction, and, to the extent admiralty jurisdiction existed, relying upon substantive New York law to reach their decisions. Cf. AGCS

Marine Ins. Co. v. World Fuel Servs., Inc., 220 F. Supp. 3d 431, 440-42 (S.D.N.Y. 2016) (analyzing the authority cited by Plaintiff).

Other courts sitting in admiralty have instead used the annual average Treasury Bill rate because it "more closely parallels the income the damages would have earned in a short-term, risk-free investment" and provides a more uniform national rate not dependent on a plaintiff's choice of available forum states. Dessert Serv., Inc. v. M/V MSC Jamie/Rafaela, 219 F. Supp. 2d 504, 509 (S.D.N.Y. 2002). Here, the only connection between this action and this district appears to be the dispute resolution clause in the BIMCO Form and the Court has not substantially relied on New York law in reaching its decision on the merits of Plaintiff's claim. Accordingly, the Court concludes that Plaintiff is entitled prejudgment interest "on the basis of the 52–week Treasury Bill rates in effect on [October 20] of each year, compounded annually," to reflect the accrual of interest following the expiration of the 90-day notice period after Defendants' improper termination of the contract on July 20, 2015. See Orient Overseas Container Line Ltd. v. Crystal Cove Seafood Corp., No. 10 CV. 3166 PGG, 2012 WL 463927, at *12 (S.D.N.Y. Feb. 14, 2012).

CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is granted. Plaintiff is entitled to judgment against Defendants in the principal amount of $802,913.01, plus accrued interest, compounded annually, at an annual rate of .22% from October 20, 2015 through October 19, 2016 in the amount of $1,766.41, .64% from October 20, 2016 through October 19, 2017 in the amount of $5,149.95, and 1.39% from October 20, 2017 in the amount $9,652.94,

through the date of judgment, for a total judgment in the amount of $819,482.31. This Memorandum Opinion and Order resolves Docket Entry No. 56.

The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Dated: New York, New York
August 29, 2018

        /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge